## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## NORTHERN DIVISION

LESLIE FISHER,

  Plaintiff,                              Case No.
                                            HON.

Vs.

MICHIGAN STATE POLICE TROOPER
RANDALL JORDAN;
MICHIGAN STATE POLICE LIEUTENANT
MATTHEW RICE;
MICHIGAN STATE POLICE DETECTIVE
JOHN TRAFELET;
MICHIGAN STATE POLICE DETECTIVE
JOHN PARKER;
MICHIGAN STATE POLICE TROOPER
CASEY LALONE;
MT. PLEASANT PATROLMAN JASON POWELL;
CENTRAL MICHIGAN UNIVERSITY POLICE
DEPARTMENT DETECTIVE RILEY OLSON;
SHEPARD POLICE DEPARTMENT
OFFICER GARY JANOFSKI;
ISABELLA COUNTY SHERIFF'S DEPARTMENT
DEPUTY ZACK FERRIER;
ISABELLA COUNTY SHERIFF'S DEPARTMENT
SHERIFF MICHAEL MAIN,

Jointly and Severally,
   Defendants.
_____/
DAVID F. ZUPPKE, PLC
David F. Zuppke (P31240)
Attorney for Plaintiff
25892 Woodward Ave.
Royal Oak, MI 48067
248-206-5900
david@zuppkelaw.com
_____/

There is no other civil action between these parties arising out of the same transaction or occurrence as alleged in this complaint pending in this court, nor has any such action been previously filed and dismissed or transferred after having been assigned to a judge.

## **COMPLAINT FOR DAMAGES AND JURY DEMAND**

Plaintiff, Leslie Fisher ("LESLIE"), complains as follows:

**PRELIMINARY STATEMENT**

This action is brought by a U.S. citizen domiciled in Isabella County, Michigan, against city, county and state police officers and troopers for damages arising out of her April 12, 2016 false arrest, handcuffing, illegal transport to jail, imprisonment and subsequent malicious prosecution without probable cause.

**JURISDICTION & VENUE**

1. Jurisdiction is founded on 28 U.S.C. §1331 (federal question), and pursuant to the Fourth, Fourteenth and, Fifth Amendments to the United States Constitution, as well as 42 U.S.C § 1983, 28 U.S.C. § 1331 and 28 U.S.C. § 1343 (civil rights). Pendant claims are governed by supplemental jurisdiction under 28 U.S.C. §1367.

2. Venue is properly laid in this Court pursuant to 28 USC §1391(b) as the Defendants, upon information and belief, reside in and the claim arose in the Eastern District of Michigan.

3. The Defendants' acts were undertaken intentionally, willfully, wantonly, maliciously, sadistically and with callous disregard for FISHER'S rights, health and well-being, entitling her to punitive damages under federal law and exemplary damages under state law.

**THE PARTIES**

4. LESLIE, at all relevant times, was a resident of Isabella County, Michigan.

5. Upon information and belief, each Defendant is domiciled and doing business in the Eastern District Northern Division of Michigan.

6. All of the complained of constitutional violations and state law torts occurred in Eastern District Northern Division of Michigan.

7. The complained of incident and events all occurred in Isabella County, and within the jurisdiction of this Court.

8. At all relevant times, each Defendant was acting within the scope and course of his employment and under color of state law. Each is sued in his individual capacity.

**FACTS**

9. In 2016, LESLIE was a registered cardholder and valid patient under the Michigan Medical Marijuana Act.

10. At the same time, her husband Steven Fisher ("STEVEN"), was her caregiver (and also a registered MMMA patient).

11. STEVEN lawfully grew marijuana for his and LESLIE'S medicinal use only, in the detached garage at his residence located at 316 N. 3rd St., Shepherd, Michigan ("residence"), and he processed the marijuana into THC wax at his work shop ("shop"), located approximately a block away at 432 N. 4th Street.

12. The Defendants were part of the Bay Area Narcotics Enforcement Team ("BAYANET"), which is a police agency, actual or ostensible, comprised of local police and other agencies, including, among others, the Mt. Pleasant Police Department, Isabella County Sheriff's Department and the Michigan State Police.

13. BAYANET'S stated purpose is to convict ***drug dealers and drug crime organization leaders***, not to arrest and prosecute immunized medical marijuana patients or immunized care givers growing lawful amounts of medicinal marijuana.

14. In approximately the second week of March 2016, BAYANET received an "anonymous tip" from a single "tipster" previously unknown to BAYANET, that STEVEN was growing marijuana at the residence and was processing the marijuana into THC wax at the shop.

4

15. The tipster allegedly informed that he had observed finished THC wax product inside the shop, but did not indicate that LESLIE was involved in any manner whatsoever.

16. The tipster *did not* provide any information suggesting that LESLIE had sold or was selling marijuana or THC.

17. Defendant Randall Jordan ("JORDAN"), attempted to corroborate the tip to determine whether there was probable cause to prosecute STEVEN (only), for "manufacturing and/or trafficking drugs".

18. Within two weeks of receiving the anonymous tip, JORDAN commenced an investigation to discover facts that would establish probable cause to seek and obtain a search warrant of STEVEN'S residence and shop, to uncover evidence of his possible drug manufacturing and trafficking operation.

19. The investigation was not commenced for purposes of uncovering evidence of the lawful use of medical marijuana.

20. JORDAN and BROWN'S investigation consisted solely of the following:

    a. Searching the Isabella Land records to determine the names of the registered owners of the residence and shop;

    b. "Numerous" surveillance trips to the residence and shop;

    c. "Trash pulls" at the residence on March 22, 2016 and April 12, 2016.

    d. A couple of "drive-bys" of the FISHER residence.

21. None of the investigative efforts yielded any evidence of the manufacturing or trafficking of marijuana.

22. The evidence uncovered prior to JORDAN filing an Affidavit for a Search Warrant was at best, evidence of possible personal use of marijuana.

23. The quantity of marijuana found in the first trash pull was so small as to be almost immeasurable.

24. And on the second trash pull, JORDAN found a very small amount of marijuana with some stems and some wax paper with suspected THC.

25. Based upon the two trash pulls and a single anonymous tip from a first time tipster, JORDAN presented the Magistrate/Judge on April 12, 2016 with a signed Affidavit, *Exhibit 1,* which contained partial and misleading information by omission, and exaggerated facts intended to persuade the Magistrate/Judge to issue a search warrant.

26. Specifically, JORDAN indicated that BAYANET "member**s**", in the plural, had received anonymous "tip**s**", in the plural.

27. In truth, there was only one anonymous tipster and one tip.

28. Glaringly absent from his Affidavit is the fact that the quantity of marijuana in both trash pulls combined was consistent only with personal marijuana use, not manufacturing or trafficking.

29. JORDAN failed to inform the Magistrate/Judge that he found a "roach" in the trash, which is consistent with personal use of marijuana *only*, and he failed to indicate that he intentionally elected not to preserve this evidence.

30. Missing from JORDAN'S report is the fact that he and BROWN conducted several additional surveillance trips and found no evidence of manufacturing or trafficking.

31. JORDAN failed to mention that the tipster was previously unknown to Defendants.

32. At all relevant times, Plaintiff and her husband both possessed "valid medical marijuana cards," a fact that has been established as a matter of law following an evidentiary hearing in Isabella County Circuit Trial Court, Case No. 16-802-FH.

33. JORDAN has admitted, under oath, that he did not conduct a typical investigation commonly conducted to uncover a manufacturing and/or trafficking operation, i.e.:

    a. No investigation of utility usage in order to verify manufacturing operations;

    b. No "knock and talk", which would have resulted in the discovery that the FISHERS held valid medical marijuana cards and STEVEN'S immunization for growing, processing, using and

7

supplying LESLIE with lawful quantities of medical marijuana under Sec. 8 of the MMMA.

34. Based upon JORDAN'S misleading Affidavit, the Magistrate/Judge issued a Search Warrant to search the FISHERS' residence, garage and shop.

35. On April 12, 2016, armed with the Search Warrant, the BAYANET team knocked on the FISHER'S front door and observed STEVEN walking to answer it.

36. Notwithstanding the fact that STEVEN was walking over to open his front door only feet away, the BAYANET officers elected to violently crash down the door and charge into the residence in full uniform with guns drawn.

37. Once the residence was breached, LESLIE was located in her bedroom dressing for work and was physically restrained and prevented from leaving the residence.

38. LESLIE repeatedly informed multiple officers that she needed to call her employer to inform that she would not be able to come into work that day.

39. She begged multiple officers to allow her to make the call to her employer.

40. She told the officers that she would be fired if she did not call in.

41. Her pleas were refused and she was fired the next day for "no call, no show".

42. During the search, Defendants were provided with both FISHERS' medical marijuana cards.

43. Defendants searched LESLIE'S residence, the detached garage and STEVEN'S shop.

44. No evidence connecting LESLIE to any crime was found, yet thousands of dollars of her personal assets were seized, i.e. cash, credit cards, gun(s), computers, tax returns, jewelry, jet ski, motor vehicle, etc.

45. LESLIE was handcuffed, arrested and jailed for approximately 30 hours.

46. During the course of a search of STEVEN'S home pursuant to a search warrant premised upon a tip involving only STEVEN, LESLIE was searched without a warrant.

47. During the search of LESLIE by Defendant uniformed officers, wielding guns, the Defendants were informed by LESLIE and STEVEN that LESLIE had ***never*** entered the locked buildings in which STEVEN was lawfully growing and processing marijuana.

48. Despite the Defendants gaining entry to the locked buildings, and despite being informed that LESLIE had not entered the buildings and was unaware of the contents therein, the Defendants elected not to conduct any fingerprinting to corroborate that fact.

9

49. With loaded drawn guns, Defendants accosted LESLIE and restrained her freedom to walk away.

50. Each Defendant had both the opportunity and the means to prevent the other Defendants from violating LESLIE'S constitutional rights.

51. Notwithstanding, each Defendant failed to intervene on LESLIE'S behalf, and none attempted to prevent the other Defendants from violating her rights.

52. Under the facts and circumstances known to Defendants, there was no probable cause to believe that LESLIE had committed or was committing a crime.

53. The Defendants went out of their way to avoid exculpating LESLIE.

54. The Defendants had actual notice that LESLIE held a lawful medical marijuana card and possessed less than the lawful quantity of marijuana needed for her treatment.

55. Defendants deliberately refused to allow LESLIE to contact her employer with a phone call in order to preserve her job.

56. LESLIE was charged, *<u>without probable cause</u>*, with the following felonies:

    a. **COUNT 1 – CONTROLLED SUBSTANCE - DELIVERY/MANUFACTURE 5-45 KILOGRAMS OF MARIJUANA OR 20-200 PLANTS (PROCESSED MARIJUANA)**: "did possess with intent to deliver 5 kilograms or

more, but less than 45 kilograms of marijuana or a mixture containing marijuana, contrary to MCL 333.7401(2)(d)(ii)"; a seven-year felony with a possible fine of $500,000.00;

b. **COUNT 2 - CONTROLLED SUBSTANCE - DELIVERY/MANUFACTURE 5-45 KILOGRAMS OF MARIJUANA OR 20-200 PLANTS (PROCESSED MARIJUANA)**: "did possess with the intent to deliver 20 marijuana plants or more, but less than 200 plants, contrary to MCL 333.7401(2)(d)(ii)", a seven-year felony with a possible fine of $500,000.00;

c. **COUNT 3 - WEAPONS – FELONY FIREARM –** "did carrying or have in her possession a firearm, to wit: pistol(s) and/or rifle(s) and/or shotgun(s) at the time she committed or attempted to commit a felony, to wit: Controlled Substance-Delivery/Manufacture 5-45 Kilograms of Marijuana and/or Controlled Substance-Delivery/Manufacture 20-200 Plants contrary to MCL 750.227(b)"; a two year felony that runs consecutively with, and preceding any term of imprisonment imposed for the felony or attempted felony conviction; Mandatory forfeiture of weapon or device [see MCL 750.239];

d. **COUNT 4 – CONTROLLED SUBSTANCE – MAINTAINING A DRUG HOUSE –** "did knowingly or intentionally keep or maintain a dwelling, that was used for the keeping or selling of controlled substances in violation of article 7 of the public health code, being MCL 333.7101, et seq.; contrary to MCL 333.7405(1)(d) and MCL 333.7406". a "High Court Misdemeanor" a Two Years and/or a $25,000.00 fine crime.

57. LESLIE *was not* charged as an "aider and abettor".

58. LESLIE was forced to retain an attorney to defend herself, at among other things, her Preliminary Examination which consisted of three separate hearings over a span of more than three months.

11

59. As determined by the Circuit Court, and as obvious on the "record" created at the preliminary examination, the District Court Judge abused his discretion when he bound the case over for trial to the Circuit Court.

60. However, once the case was assigned to Judge Paul H. Chamberlain of the Isabella County Circuit Court, he granted LESLIE'S Motion to Quash the Bindover and Dismiss All Charges for lack of probable cause.

61. Among others, Judge Chamberlain made the following factual and legal findings:

   a. There was ***no evidence*** that LESLIE ***ever*** possessed an illegal quantity of marijuana;

   b. There was ***no evidence*** that LESLIE was aware of the quantity of marijuana that her husband kept in the detached garage located at the residence;

   c. There was ***no evidence*** that she ***ever*** stepped into the garage;

   d. There was ***no evidence*** that LESLIE actively assisted or aided and abetted her husband in ***any*** illegal activity;

   e. The District Court Judge ***abused his discretion*** by binding LESLIE over to the Circuit Court for trial on meritless charges.

62. The Defendants had ***no probable cause*** to prosecute LESLIE for the crimes charged.

63. There was not a shred of evidence that LESLIE had committed any crime whatsoever.

64. The People elected not to appeal Judge Chamberlain's dismissal of criminal charges.

65. Later, on January 31, 2017, Judge Chamberlain made a factual and legal finding that the amount of marijuana and related THC products grown, processed and possessed by STEVEN was "less marijuana than was reasonably necessary to ensure an uninterrupted supply of marijuana for medical use" of the FISHERS, and was thus lawful and in compliance with Sec. 8 of the MMMA.

66. All criminal charges against STEVEN were also dismissed.

67. As a direct and proximate result of Plaintiff's illegal search and seizure, LESLIE suffered past, present, and future economic and non-economic damages, including but not limited to:

    a.    Physical pain and suffering;

    b.    Legal expenses;

    c.    Lost income, fringe benefits, and earning capacity;

    d.    Mortification, shock, fright, embarrassment, humiliation, emotional distress, mental anguish, outrage, shame, anxiety, feelings of helplessness, despair, depression, loss of dignity and self-esteem, loss of enjoyment of life, and reputation damage;

  e.  Loss of liberty; and denial of constitutional rights.

## COUNT I – 42 USC § 1983 – UNREASONABLE SEARCH AND SEIZURE

68. LESLIE incorporates the foregoing allegations as if fully restated.

69. LESLIE had the Constitutional right to the possession and control of her own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law.

70. The actions of Defendants in detaining, patting down, and searching her person and home without probable cause or further investigation, were all violations of LESLIE'S Fourth Amendment safeguards against unreasonable seizures, made actionable by 42 USC §1983.

71. Individually and in concert, and acting under color of law but contrary to law, without probable cause, Defendants unlawfully, maliciously, recklessly, and indifferently deprived LESLIE of her rights, privileges, or immunities secured under the Constitution and laws of the United States and 42 USC §1983, including her right to be free from an unreasonable seizure of her person and property, as guaranteed by Amendments IV and XIV of the United States Constitution.

72. By intentionally or recklessly misrepresenting by omission facts in an affidavit, Defendants unlawfully gained entry into LESLIE'S residence and

unlawfully handcuffed, searched and seized her in violation of her constitutional rights.

WHEREFORE, Plaintiff seeks a money judgment against each Defendant, individually, jointly and severally, for compensatory damages in excess of $75,000.00; exemplary damages in an amount in excess of $75,000.00, and if available, punitive damages in an amount in excess of $75,000.00, plus costs, pre and post judgment interest, and actual attorney fees as allowed by law.

### COUNT II – 42 USC § 1983 – ARREST WITHOUT PROBABLE CAUSE

73. LESLIE incorporates the foregoing allegations as if fully restated.

74. LESLIE'S arrest was illegal and unjustified because it was not based upon probable cause.

75. Individually, and in concert, and acting under color of law but contrary to law, and without probable cause, Defendants unlawfully, maliciously, recklessly, and indifferently deprived LESLIE of her rights, privileges, or immunities secured under the Constitution and laws of the United States and 42 USC §1983, including her right to be free from being arrested without probable cause, as guaranteed by Amendments IV and XIV of the United States Constitution.

WHEREFORE, Plaintiff seeks a money judgment against each Defendant, individually, jointly and severally, for compensatory damages in excess of

$75,000.00; exemplary damages in an amount in excess of $75,000.00, and if available, punitive damages in an amount in excess of $75,000.00, plus costs, pre and post judgment interest, and actual attorney fees as allowed by law.

### COUNT III – 42 USC § 1983 – PROSECUTION WITHOUT PROBABLE CAUSE

76. LESLIE incorporates the foregoing allegations as if fully restated.

77. Premised upon an illegally obtained search warrant and arrest warrant, Defendants prosecuted LESLIE without probable cause.

78. All charges against LESLIE were subsequently dismissed by the Circuit Court based upon a complete lack of probable cause to arrest or prosecute LESLIE.

79. The actions complained of constitute prosecution without probable cause in violation of the Fourth Amendment, giving rise to an action pursuant to 42 U.S.C. §1983.

80. As a result of the actions of Defendants, LESLIE suffered the damages described above.

WHEREFORE, Plaintiff seeks a money judgment against each Defendant, individually, jointly and severally, for compensatory damages in excess of $75,000.00; exemplary damages in an amount in excess of $75,000.00, and if available, punitive damages in an amount in excess of $75,000.00, plus costs, pre and post judgment interest, and actual attorney fees as allowed by law.

## COUNT IV – PENDENT CLAIM – FALSE IMPRISONMENT

81. LESLIE incorporates the foregoing allegations as if fully restated.

82. Defendants unlawfully restrained and deprived Plaintiff of her liberty and freedom of movement and otherwise falsely imprisoned her in jail, without probable cause, for approximately 30 hours.

83. Each defendant is liable for the preventable harms caused by LESLIE'S false imprisonment because each observed and had reason to know that LESLIE had been unjustifiably arrested without probable cause; that a constitutional violation had been committed; and each Defendant had a realistic opportunity to intervene and prevent LESLIE'S false arrest and imprisonment.

84. As a direct and proximate result of LESLIE'S false imprisonment, she suffered the damages stated above.

WHEREFORE, Plaintiff seeks a money judgment against each Defendant, individually, jointly and severally, for compensatory damages in excess of $75,000.00; exemplary damages in an amount in excess of $75,000.00, and if available, punitive damages in an amount in excess of $75,000.00, plus costs, pre and post judgment interest, and actual attorney fees as allowed by law.

## COUNT V – INTENTIONAL AND/OR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

85. LESLIE incorporates the foregoing allegations as if fully restated.

86. Defendants' outrageous acts and omissions were intended to, and in fact did, inflict severe and pervasive emotional distress upon LESLIE.

87. The physical and verbal mistreatment of LESLIE by the Defendants constitutes intentional infliction of emotional distress under Michigan law.

88. Defendants' actions were extreme and outrageous, gratuitous, unnecessary and excessive acts by law enforcement officers, willful, all of which was designed to produce, and did produce, embarrassment and humiliation, with resulting emotional distress, on the part of Plaintiff.

89. Defendants had the duty of care to not intentionally or negligently inflict emotional distress upon LESLIE.

90. Defendants directly and vicariously, intentionally or negligently, breached that duty.

91. As a direct and proximate result of the intentional, and/or negligent infliction of emotional distress upon Plaintiff, she sustained severe emotional distress, along with the other damages set forth above.

WHEREFORE, Plaintiff seeks a money judgment against each Defendant, individually, jointly and severally, for compensatory damages in excess of $75,000.00; exemplary damages in an amount in excess of $75,000.00, and if available, punitive damages in an amount in excess of $75,000.00, plus costs, pre and post judgment interest, and actual attorney fees as allowed by law.

## COUNT VI – ASSAULT AND BATTERY

92. LESLIE incorporates the foregoing allegations as if fully restated.

93. Defendants' acts directly, and vicariously, constituted an assault and battery of LESLIE.

94. The assault and battery directly and proximately caused Plaintiff to suffer actual damages as set forth above.

WHEREFORE, LESLIE seeks a money judgment against each Defendant, individually, jointly and severally, for compensatory damages in excess of $75,000.00; exemplary damages in an amount in excess of $75,000.00, and if available, punitive damages in an amount in excess of $75,000.00, plus costs, pre and post judgment interest, and actual attorney fees as allowed by law.

## JURY DEMAND

**NOW COMES** the above-named Plaintiff, LESLIE FISHER, by and through her attorney, DAVID F. ZUPPKE, P.L.C., and hereby demands a trial by jury.

Respectfully submitted,

DAVID F. ZUPPKE, PLC

By: */s/DAVID F. ZUPPKE*
    David F. Zuppke (P31240)
    Attorney for Plaintiff

August 2, 2017